Merrimack,
No. 4410.

FRANK J. MORONO

*v.*

JOHN M. CODY d/b/a D. F. SHEA COMPANY & a.

Argued June 7, 1955.

Decided June 30, 1955.

*Robert D. Branch* (by brief and orally), for the plaintiff.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* (*Mr. Nourie* orally), for the defendants.

DUNCAN, J. The Trial Court's finding that total disability terminated on October 25, 1952, was warranted by the evidence. An orthopedic surgeon who examined the plaintiff several times up to and including September 3, 1952, was of the opinion that he was then able to do light work, not involving persistent bending, twisting and stooping. There was other medical testimony that he could perform many of the duties of a painter as early as July 22,

1952. The plaintiff was paid compensation for total disability to October 25, 1952. He is in no position to complain that the Court fixed a terminal date which was later than the date which the testimony of his own witness tended to show marked the end of his disability "for work at any gainful occupation." *Colantonio* v. *Company*, 97 N. H. 23, 25. See *Zeady* v. *Company*, 96 N. H. 328.

While the plaintiff himself testified that he was unable to do any work until May 1953, when he commenced to work part time, pumping gasoline in a filling station, the medical evidence that he was extremely cautious and apprehensive about his injury, and hesitant to "give his muscles a chance to regain their normal strength" warranted the conclusion that he was able to do some work before he in fact did. The exception to the finding with respect to total disability is overruled.

The Trial Court's finding that partial disability ceased on October 24, 1954, was likewise one which could properly be made on the evidence. One of the plaintiff's witnesses testified that as of September 3, 1952, the date of his last examination of the plaintiff, he estimated the plaintiff's disability at thirty per cent. When asked "the length of time during which there would be improvement or . . . which would pass before the . . . disability had been remedied," the witness testified that he had estimated that "improvement could take place for a period of two years" from the time of the examination. The same witness conceded that the plaintiff was exaggerating his symptoms in September 1952, and testified that it was then his opinion that the plaintiff probably would improve "as he exercised and worked along." The defendant's evidence was that the fracture was healed six months after the injury, although further time was needed to "get the muscles of his back into tone again": that on December 7, 1953, or more than a year after the plaintiff's witness last saw the plaintiff, he was working four hours a day and that it was then the opinion of the defendant's expert that he should thereafter be able to work longer hours "if he overcame his fear" that his pain on motion was due to the fracture rather than disuse of his muscles; that his back should not "give him any trouble . . . if he would give it a chance to get well."

The plaintiff was "under the general obligation to adopt reasonable measures to minimize his damages." *Akins' Case*, 302 Mass. 562, 565. "The act shows nothing to indicate an injured workman's privilege either by intent or by imprudence to intensify or prolong

a disability at the employer's expense." *Neault* v. *Company*, 86 N. H. 231, 232. As a whole the record was such as to warrant, even though it did not compel, the conclusion that the period ending October 25, 1954, afforded the plaintiff a reasonable time in which to fully regain his ability to work, and that any loss of earning capacity beyond that date would be either unnecessary or conjectural. See *Vallee* v. *Company*, 89 N. H. 285, 289.

The plaintiff's final exception is to the computation of compensation for partial disability at a rate of $11.60 a week. While the plaintiff's evidence did not show the extent to which his earnings before the accident were "straight time earnings," or what were the "actual number of hours worked" (Laws 1947, c. 266, s. 2 V), it was not disputed that he received at least $58 for a forty-hour week before his injury, and that the pay which he received in 1953 was at the rate of one dollar an hour. How the figure of $11.60 a week was arrived at is not apparent, although it may be deemed to have been within the Court's discretion in view of the generality of the evidence concerning plaintiff's earnings before the accident. *Clover &c. Co.* v. *Smith Co.*, 96 N. H. 491, 493. It necessarily implies a finding that after the accident the plaintiff was able to work longer hours than he did. *Lincoln* v. *Langley*, 99 N. H. 158. A finding that the plaintiff was able to work forty hours a week would call for compensation in the sum of $12 a week, assuming $58 a week to have been his average weekly wage before injury. See Laws 1947, c. 266, *supra*, s. 23; *Bolduc* v. *Company*, 96 N. H. 235, 238. On the evidence such a finding could properly be made even though the plaintiff did not actually work such hours and claimed to be unable to work more than 24 hours a week. *Cf. Carignan* v. *Company*, 95 N. H. 333, 336.

Since the defendant is satisfied that the amount of compensation for partial disability should be $12 a week, the award of $11.60 per week is set aside, and the decree should be modified to provide for such compensation at $12 per week for 104 weeks.

*Remanded.*

All concurred.