PHILLIPS PETROLEUM COMPANY and/or Cravens, Dargan & Company, Plaintiffs, v. ALASKA INDUSTRIAL BOARD, consisting of Henry A. Benson, Chairman, J. Gerald Williams, Member, and Ross P. Duncan, Member, and William McKenzie, Defendants.

No. 7746–A.

District Court, Alaska. First Division, Juneau.

Aug. 2, 1958.

**660**

Robert Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for plaintiffs.

Robert J. Annis (of Robertson, Monagle & Eastaugh), Juneau, Alaska, Bell, Sanders & Tallman, Anchorage, Alaska, for defendant McKenzie.

KELLY, District Judge.

This matter comes before this court upon an appeal by the Phillips Petroleum Company and its insurance carrier, Cravens, Dargan & Company (hereafter "employer") from the finding of the Alaska Industrial Board (hereafter "Board") made December 18, 1957. The employee had been paid temporary disability compensation under the provisions of the Workmen's Compensation Act, A.C.L.A. 1949, § 43-3-1 et seq. by the plaintiffs in the amount of $3,400 for the period December 17, 1955 through August 10, 1956.

The employee-claimant suffered a herniated disc injury in the lower region of his back while in the employ of the plaintiff. Three doctors recommended an operation for the condition, which the employee refused to undergo for "domestic and personal reasons," but stated that at some future date he would undergo the operation.

The employee filed an application for the adjustment of his claim with the Board, and on May 24, 1957, a hearing was held before the full Board. No oral testimony was taken at that hearing. The Board made an award, finding that the employee had refused to undergo surgery; that had the employee undergone the necessary surgery he would have been temporarily disabled until September 1, 1957.

The Board further found that the maximum permanent disability without surgery was 40% of total and the Board was of the further opinion that the maximum permanent disability that might be anticipated in normal cases of this kind would be 40%. The Board granted the employee temporary total disability compensation to September 1, 1957.

The employer claims that the employee was without sufficient legal justification to refuse the operation, and that the employer should not be held further responsible for any damage suffered by the employee. Medical testimony indicated that the condition of the employee could be corrected only to a 20% permanent partial disability.

The employer claims also that although the employee had been placed upon compensation at the maximum rate of $100 a week and was paid this compensation from the time he left work until August of 1956, he actually was employed a great portion of this time; that he admitted on cross examination that he worked in Anchorage for the City Bus Lines for a period of five days and that he

further worked two days in Anchorage on a welding job. Employer claims that under the 5-day week setup, they are entitled to a refund for one and two-fifths weeks at $100 a week or a total of $140. Employer further claims that the employee returned to Oklahoma and admitted that he assisted his wife in the operation of her restaurant from the time he returned to Oklahoma on February 1, 1956, until the date of the taking of his depositions in August of 1956, and although he did not actually receive any wages for this work, he did perform substantial work during all this period of time.

Employer claims that the employee's condition became fixed in August of 1956 and that as to this the doctors are all in substantial agreement.

The Employer presents the issues in this appeal as follows:

(1) That the employee is barred from additional compensation over and above the compensation already paid him by reason of his refusal to undergo surgery as recommended by the doctors.

(2) That in the event he is not barred from additional compensation as is requested, the period of total temporary disability should be found to have terminated as of August 10, 1956 and that it should be found that the employer had overpaid compensation, for the period the employee was working in Anchorage and drawing maximum compensation, in the sum of $140, and that in addition he should be barred from obtaining compensation during the period he was assisting his wife in her restaurant in Oklahoma.

(3) That in the event additional compensation is allowed employee for the period of convalescence involved in an operation, the amount of

permanent partial disability should be reduced to 20%, which is the amount the doctors agree would result if an operation were performed.

 It is recognized that an injured workman will be denied a right to compensation from his employer for any disability which may be removed or modified by surgical treatment not involving serious suffering nor attended by great danger, where the employee refuses to undergo such an operation. Sultan & Chera Corp. v. Fallas, Fla.1952, 59 So.2d 535; Walker v. International Paper Company, Miss.1957, 92 So.2d 445. The law contemplates that the injured workman will do everything humanly possible to restore himself to his normal strength so as to minimize his damages, and where he fails to do so, the consequent disability results from the voluntary conduct of the employee, and not the injury. Morono v. Cody, 1955, 99 N.H. 479, 115 A.2d 650. It is only where an injured employee's refusal to undergo surgical treatment is termed reasonable that his refusal will not act as a bar to further compensation. The test of "reasonableness" is to be determined in the light of consideration of the degree of pain accompanying the operation, consequent inconvenience to the employee, and possible risk of life attending the nature of the operation. Each of these factors is to be considered in relation to the possible benefit that may be derived from the operation, so that a determination may be properly made as to whether a refusal is justified. United States Coal & Coke Co. v. Lloyd, 1947, 305 Ky. 105, 203 S.W.2d 47; Dyer v. General Motors Corporation, 1947, 318 Mich. 216, 27 N.W.2d 533.

The facts of the instant case are much the same as those presented in Alexander v. Chrysler Motor Parts Corporation, 1949, 167 Kan. 711, 207 P.2d 1179. In that case, testimony was given that a total correction by operation

for a back injury was slight. At most, only a partial correction could be achieved, leaving the employee with a 10% permanent disability. In consideration of the pain and suffering of the employee if he were to undergo the operation, coupled with the risk of the operation itself, the court concluded that the possible correction of the back injury to only a permanent partial disability of 10% was sufficient justification for the employee to refuse surgical treatment, and the court could not conclude as a matter of law that the refusal was unreasonable and disturb the findings of fact. In numerous other cases involving "back injuries," the courts have been reluctant to require claimants to submit to major operations as a condition to continued compensation, due to the nature of the operation. Sultan & Chera Corp. v. Fallas, supra; United States Coal & Coke Company v. Lloyd, supra.

Although the employee did not state specifically that he feared the consequences and suffering of the operation, the claimant's refusal to submit to surgical treatment couched in the language of "domestic and personal reasons" is sufficiently broad as to warrant a finding that the claimant contemplated some grave consequences resulting from the operation, whether such contemplation be founded in fear of life or suffering, or over-burdening inconvenience. The seriousness of disc operations, the attendant suffering, and the fact that the operation could effect at most only a correction of the injury to a 20% permanent partial disability, should not warrant a finding that the refusal to submit to the operation was unreasonable.

The plaintiff also contends that the Board unlawfully extended payments for total disability beyond a period during which the employee's condition became "fixed," that is, at such time as the claimant was restored to the

maximum recovery that his injury would permit. Two physicians testified that the claimant was restored to a "fixed" condition as of August, 1956, and a third physician testified that at the time of his examination in February in 1957, the claimant was restored to his normal strength, as far as his injury would permit. This latter physician did not examine the claimant prior to February 1957, and, apparently, there is no contradictory testimony to the examinations of physicians who examined the claimant in 1956. The Board granted total disability compensation to the claimant until September of 1957 on the basis that had the claimant undergone the operation which he refused to undergo, he would have been disabled totally until the expiration of that date.

Pursuant to Section 43–3–1(e) A.C.L.A. Cumulative Supplement (1958) a workman's compensation claimant is entitled to temporary total disability payments, and such amounts paid or due the claimant "shall be in addition to the amount to which he shall be entitled" under provisions of the act relating to scheduled allowances for total partial disability. Libby, McNeill & Libby v. Alaska Industrial Board, 9 Cir., 1951, 13 Alaska 401, 191 F.2d 262, certiorari denied 1952, 342 U.S. 913, 72 S.Ct. 359, 96 L. Ed. 683. In Gorman v. Atlantic Gulf & Pacific Co., 1940, 178 Md. 77, 12 A.2d 525, at page 529, the period of temporary total disability is defined as:

> " * * * the healing period or the time during which the workman is wholly disabled and unable by reason of his injury to work. It is, therefore, a separate and unitary period of compensation, and as such is distinguished from a permanent partial disability."

■ In determining compensation payments for temporary total disability, the fact that a condition can be diag-

nosed as partially permanent is not conclusive as to the termination of the period for which total temporary compensation must be made to the claimant. A claimant is entitled to compensation for temporary total disability during the period of convalescence and during which time the claimant is unable to work, and the employer remains liable for total compensation until such time as the claimant is restored to the condition so far as his injury will permit. The test is whether the claimant remains incapacitated to do work by reason of his injury, regardless of whether the injury at some time can be diagnosed as a permanent partial disability. Vader v. State Industrial Accident Commission, 1940, 163 Or. 492, 98 P.2d 714; Allen v. Department of Roads and Irrigation of State, 1948, 149 Neb. 837, 32 N.W.2d 740; Monaco v. Albert Maund, Inc., 1952, 17 N.J.Super. 425, 86 A.2d 279. The Alaska statute must be given this construction to determine the legislative intent.

The testimony of the examining physicians clearly shows that the claimant's condition was "fixed" in August of 1956. The claimant should not be allowed to prolong the period of compensation through speculative argument that, had he undergone an operation, he would have been disabled until a later date. At all times the claimant is under a duty to mitigate his damage, and where his condition is fixed prior to an operation, and he chooses to forego that operation, he must elect to take his condition as is, and cannot avail himself of the recovery period of an operation to reap additional benefits, where in fact he never consented to surgical treatment.

In a majority of jurisdictions, total disability is not to be determined by a claimant's inability to engage in work similar to that performed at the time of his injury, but the test is whether the employee can engage in some activity

to maintain his prior earning power. Clark v. Henry & Wright Mfg. Co., 1950, 136 Conn. 514, 72 A.2d 489; Lumbermens Mut. Casualty Co. v. Cook, 1943, 69 Ga.App. 131, 25 S.E.2d 67; McCall v. Potlatch Forests, 1947, 67 Idaho 415, 182 P.2d 156; Dierks Lumber & Coal Co. v. Lindley, 1938, 182 Okl. 185, 77 P.2d 44; Elliot v. Gooch Feed Mill Co., 1946, 147 Neb. 612, 24 N.W.2d 561. Yet, there are a number of jurisdictions that limit total disability solely to the inability of the employee to engage in work of a similar nature, and wages earned from an occupation other than the employee's normal occupation are not to be considered in determining compensation liability. Dobson v. Apex Coal Co., 1939, 150 Kan. 80, 91 P.2d 5; Reeves v. Union Sulphur Co., La.App.1940, 193 So. 399; Texas Employers' Ins. Ass'n v. Moran, Tex.Civ.App.1953, 261 S.W.2d 855. In Vanney v. Alaska Packers Ass'n, 1949, 12 Alaska 284, the test for total disability was proposed as "what the employee has lost by reason of his injuries." Although this case involved seasonal employment, the rule is sufficiently broad as to permit wages earned from a non-related employment to be considered in fixing compensation payments.

Notwithstanding the above conflict as to the effect of post-injury earnings on total compensation payments, there is recognized the rule in practically all jurisdictions that the ability of an employee to engage in "light or occasional" work does not negative a finding that the employee is entitled to total compensation. Jersey City Printing Co. v. Klochansky, 1950, 8 N.J.Super. 186, 73 A.2d 742; Blue Diamond Coal Co. v. Phillips, 1947, 303 Ky. 693, 198 S. W.2d 799; Vader v. State Industrial Board Accident Commission, 1940, 163 Or. 492, 98 P.2d 714; In re Iles, 1941, 56 Wyo. 443, 110 P.2d 826; Byouk v. Industrial Commission of Colorado, 1940, 106 Colo. 430, 105 P.2d

1087; Geis v. Packard Motor Car Co., 1921, 214 Mich. 646, 183 N.W. 916; White v. Tennessee Consolidated Coal Co., 1931, 162 Tenn. 380, 36 S.W.2d 902; Franzen v. Blakeley, 1952, 155 Neb. 621, 52 N.W.2d 833. Consequently, even in those jurisdictions that allow wages of a nonrelated work to be considered in fixing the amount due for compensation, the work must be of a substantial nature. It appears that if an employee cannot compete for remunerative employment in any general field of human endeavor, but can obtain occasional employment under rare conditions at small remuneration, then such earnings shall have no effect on total compensation. The real basis for such a ruling is that since through the employee's injury he lost his total earnings, and by statute the employer is limited in the amount he must compensate the employee, the earnings from slight or occasional work offset the difference between the compensation and total lost wage. Only a few jurisdictions permit "occasional or light work" to affect total compensation. Fullerton Fuel & Supply Co. v. Industrial Commission, 1931, 343 Ill. 53, 174 N.E. 900; Leaver v. Midvale Co., 1948, 162 Pa.Super. 393, 57 A.2d 698; Wareham v. United States Rubber Co., 1947, 73 R.I. 207, 54 A.2d 372. The majority of jurisdictions apply the so-called "odd-lot" doctrine to determine whether the employer is entitled to a variance in compensation payments, which refers to the ability of the employee to obtain light or occasional employment only during the period of his alleged disability. Where it is applicable, no recovery should be allowed for amounts paid for total disability, although the employee did earn some income.

In the instant case, it appears that the Board found the employment of the claimant as a temporary or part time bus driver, as well as the assistance of the claimant to his wife in her restaurant operations, as "light and/or occasion-

al" work, not of a sufficient regularity to show an improvement in the employee's condition. It appears that the fact of occasional earnings is not quite so important as the physical condition of the employee to earn income with a degree of regularity. While earnings are evidentiary of the condition of the employee, they do not *per se* entitle the employer to retribution. 2 Larson, Sec. 57.21 (1958). Apparently, the courts do not distinguish "temporary total disability" from "permanent total disability," in determining the effect of "light or occasional" work on compensation payments. Vader v. State Industrial Accident Commission, supra.

█ The facts of the instant case disclose that the employee-claimant left Alaska to reside in Oklahoma within six months after the date he left work for the plaintiff. This court has previously decided that the Board must consider the pay scale of similar employment at the residence of the claimant in determining compensation awards. Hohn v. Alaska Industrial Board, D.C.1957, 150 F.Supp. 519. The Board should have used the pay scale in Oklahoma in awarding compensation for the period employee was located in that state.

The foregoing shall constitute Findings of Fact and Conclusions of Law unless the parties desire additional Findings or Conclusions.

This matter will be remanded to the Board for a redetermination of the award consistent with this opinion. Proper order will be presented.