Strafford,
No. 6153.

DAVIDSON RUBBER COMPANY, INC.

*v.*

ANDREA MATHERSON.

July 29, 1971.

*Calderwood & Ouellette* ( *Mr. Raymond R. Ouellette* orally ) for Davidson Rubber Company Inc.

*Flynn, Powell & McGuirk* and *Charles F. Dalton, Jr.* ( *Mr. Dalton* orally ) for Andrea Matherson.

LAMPRON, J. Appeal to the superior court under RSA 281:37 by the employer, Davidson Rubber Company, Inc., from a decision of the deputy labor commissioner, on August 24, 1967,

ordering that payments for total disability be continued to its employee, Andrea Matherson, who was injured on October 20, 1966.

Hearing before the Superior Court ( *Flynn,* J. ) who made certain findings and rulings and decreed that Mrs. Matherson was not entitled to compensation for total disability after twenty-eight weeks from the date of her injury. The court further ordered that if she desires further compensation she must first submit to the surgical procedures recommended to cure her neuroma, with the right to select her own physician and bearing the reasonable expense thereof. "If by undergoing such surgery [she] is still disabled, she may apply to the Labor Commissioner for such compensation and medical benefits to which she might be entitled from the termination date provided for herein." Mrs. Matherson's exceptions to the findings, rulings and decree, and to the denial of her motion to set aside the verdict, were reserved and transferred.

On October 20, 1966, Mrs. Matherson, who is left-handed, sustained a laceration to the distal end of her left ring finger in her work for Davidson. She was taken to the company's physician, Dr. McCooey, who sutured the laceration by applying one stitch. On October 25, he removed the suture and on a third visit, November 3, 1966, he released her for work, although she complained of discomfort in the tip of her finger. She put a metal guard on that finger and returned to work for Davidson. She was given another job which required some dexterity with her left hand. She kept banging her finger which caused her pain and after three or four days she left her work and, at the time of the court hearing on October 27, 1969, had not been employed since.

The court properly found on the evidence that "Mrs. Matherson has been troubled ever since this accident with this finger, as the scar ( about five-eighths of an inch ) is tender and causes her pain when it comes in contact with an object." "At present, Mrs. Matherson's finger tip still bothers her, causing twinges when it gets hit while doing such housekeeping chores as ironing, using the dishwasher, scouring dish pans, making the beds, washing floors with a brush, and even while pushing the directional signal when driving her car."

After being discharged by Dr. McCooey, on November 3, 1966, Mrs. Matherson sought no further medical attention until five months later, on March 21, 1967, when at the request of her attorney she saw Dr. Wheeler. Mention was made by her at the

hearing of a visit to two doctors at Portsmouth Naval Hospital in February, 1967, but no evidence concerning the nature or details of this visit was admitted or any offer of proof made. Dr. Wheeler found a bulge on the injured finger which was sensitive to palpation. He diagnosed her difficulty as due to a small neuroma imbedded in the scar, recommended a conservative approach, and suggested evaluation by a hand surgeon.

She was seen next by Dr. Wheeler on June 29, 1967, at the time of the hearing before the labor commissioner. "I was there for the purpose of testifying, but I arrived early enough to acquaint myself with her condition on that particular day and also to ask her some questions to refresh my memory." Dr. Wheeler next saw Mrs. Matherson on September 16, 1969, when he was present at an examination made of her by Dr. McCooey. It could be found on the evidence that after her first visit to Dr. Wheeler's office on March 21, 1967, Mrs. Matherson did not see him again for medical attention until September 1969, about two and a half years after her first visit.

As to her contacts with Dr. McCooey after her discharge on November 3, 1966, the court properly found that he examined Mrs. Matherson at the request of Davidson on June 9, 1967, and again on December 13, 1968, finding numbness in the tip of her finger and pain on pressure but no neuroma. He next saw her on September 16, 1969, when he concluded that the pain in her finger could be caused by a neuroma. Dr. McCooey testified that Mrs. Matherson never consulted him to ask his opinion "with regard to her condition in view of this painful scar" or "for follow up treatment or examination" after he discharged her on November 3, 1966. He further testified that "if she had come to me . . . and continued to come to me, and she continued to have pain in the scar, and I evaluated her, and I saw after a period of one month that in conservative treatment we were not making any progress, I would say, 'Andrea, we are not making progress now, and I would have that scar excised.'"

The court properly found on the evidence that this operation was "a relatively simple surgical procedure involving an insubstantial risk, with the probability of cure good, [and] could probably have alleviated . . . [her] disability. It is found upon all the evidence that . . . [she] did not make a reasonable effort to overcome her disability within a reasonable time after her injury."

The issue to be determined by the trial court was the length of Mrs. Matherson's disability which was properly chargeable to the accident to her finger incurred in her employment by David- son. " The chargeable disability is only that resulting from accident incurred in employment, and not that caused by the workman's carelessness preventing or delaying recovery from the accident. " *Neault* v. *Company,* 86 N.H. 231, 232, 166 A. 289, 290 ( 1933 ); *Hickey* v. *Brown Company,* 94 N.H. 21, 22, 45 A.2d 217 ( 1946 ). 'The act shows nothing to indicate an injured work- man's privilege either by intent or by imprudence to intensify or prolong a disability at the employer's expense. ' *Morono* v. *Cody,* 99 N.H. 479, 481-82, 115 A.2d 650, 651 ( 1955 ).

To determine the effect of the refusal by an employee to submit to an operation, this court has established the following criterion: " [ W ]as the employee's conduct in refusing to submit to the opera- tion so arbitrary and unreasonable that the continued disability could be said to have resulted from his own misconduct. " *Cate* v. *Perkins Machine Co.,* 102 N.H. 391, 394, 157 A.2d 778, 780 ( 1960 ); *Merrimack Sheet Metal Inc.* v. *Martin,* 110 N.H. 84, 86, 260 A.2d 460, 461 ( 1970 ). We are of the opinion that the same test should be applied to judge the effect of a failure on the part of an employee to seek or follow medical treatment for an injury arising out of employment, that is, was the em- ployee's failure to seek or pursue medical treatment so arbitrary and unreasonable that the continued disability could be said to have resulted from her own misconduct. *Morono* v. *Cody,* 99 N.H. 479, 481, 482, 115 A.2d 650, 651 ( 1955 ); 1 Larson, Workmen's Compensation *s.* 318; *see Lobnitz* v. *Orange Memorial Hospital,* 126 So. 2d 739 ( Fla. 1961 ).

The trial court found that "reasonable action required that, at the very least, Mrs. Matherson seek medical attention to ascertain whether anything could be done to overcome her disability". " While no person should be required to work in pain, neither should an employee be allowed to stand idly by and collect com- pensation benefits for an injury, which, in all probability, could be cured by minor surgical attention. " There was evidence that after quitting work early in November 1966 because of pain to her injured finger, she did not consult a doctor until March 21, 1967. Although her finger continued to trouble her, Mrs. Mather- son did not seek further medical attention until September 1969, about two and a half years after she first sought treatment.

In fixing her maximum period of compensable disability at 28 weeks, the trial court found that to be "the maximum period during which a reasonably prudent employee, who is interested in seeking relief, should wait under the circumstances of this case before undertaking procedures to cure a disability." Although not expressed in the terms of the *Cate supra* language, the court's findings and rulings, taken as a whole, constitute an implied finding and ruling that any disability beyond 28 weeks resulted from Mrs. Matherson's "own misconduct" and was not compensable. *Cate v. Perkins Machine Co.,* 102 N.H. 391, 157 A.2d 778 ( 1960 ). On the record before us the case of *Merrimack Sheet Metal Inc.* v. *Martin,* 110 N.H. 84, 260 A.2d 460 ( 1970 ) is not apposite.

*Exceptions overruled.*

All concurred.