Dale **BAKER**, Appellant/Cross–Appellee,

v.

**REED–DOWD CO.**, and Aetna Casualty & Surety Company, Appellees/Cross–Appellants.

Nos. S–4393, S–4426.

Supreme Court of Alaska.

May 22, 1992.

---

Allan J. Olson, Deidre D. Ford, Staley, DeLisio, Cook & Sherry, Inc., Anchorage, for appellees/cross-appellants.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

Appellant/cross-appellee, Dale Baker, was injured while working for appellee/cross-appellant, Reed–Dowd Co. Baker applied to the Alaska Workers' Compensation Board for workers' compensation benefits. The Board awarded some, but not all, of the benefits that Baker sought. Both parties appealed the Board's award to the superior court. The superior court affirmed. Both parties appeal the superior court's decision. We affirm in part and reverse in part.

The principal issue presented by this appeal is whether the record contains substantial evidence that Baker's disability ended as of February 11, 1989. We hold that it does not.

## II. FACTS

In April 1986 Baker injured his right shoulder when he fell from a pickup truck while working for Reed–Dowd in Alaska. Reed–Dowd provided workers' compensation benefits until March 10, 1987, when one of Baker's doctors, Dr. Jones, "released" Baker to return to work.

Shortly after the April 1986 accident, Baker was examined by Dr. Voke. On June 18, 1986, Dr. Voke ordered an arthrogram which indicated that Baker had a partial tear in his right rotator cuff.

Shortly thereafter, Baker stopped working and moved to Virginia. In Virginia, Baker was examined by Dr. Jones. On December 15, 1986, Dr. Jones operated on Baker's right shoulder to repair the rotator cuff. The operation revealed that Baker's right rotator cuff had a partial tear. Dr.

Dennis P. James, Anchorage, for appellant/cross-appellee.

Jones did not repair the tear.[1] In March 1987 Baker again underwent an arthrogram and was examined again by Dr. Jones. Dr. Jones opined "there was no sign of rotator cuff tear." Dr. Jones believed that Baker was physically capable of returning to work as of March 10, 1987.[2]

In October 1987 Baker was examined by Dr. Tegtmeyer and Dr. Stamp. Dr. Tegtmeyer performed an arthrogram which indicated that Baker had a partial tear in his right rotator cuff.

In January 1988 Baker was examined by Dr. Wang. In February 1988 Dr. Wang operated on Baker's right shoulder and repaired a partial rotator cuff tear. Dr. Wang could not determine when Baker suffered the tear. In other words, Dr. Wang could not determine whether the tear was the one caused by the 1986 work-related accident or whether it had occurred after that accident.

In August 1988 Baker was examined by Dr. Morris. In deposition, Dr. Morris opined that patients with an injury of the type and size of Baker's rotator cuff tear become medically stable within one year after surgery.[3] However, Dr. Morris testified that he could not estimate what Baker's physical capacities would be when he became medically stable.

In April 1989 Baker was again examined by Dr. Wang. At that time, Dr. Wang found that Baker was medically stable. However, Dr. Wang noted that Baker still suffered from physical impairment. Specifically, Dr. Wang noted that Baker could raise his right arm only ninety degrees before experiencing pain and that Baker's right arm was thirty to forty percent weaker than his left arm. Dr. Wang opined that as of April 11, 1989, Baker could not perform any work requiring him to lift more than fifty pounds or climb a scaffold using his right arm. Dr. Wang characterized

Baker's degree of physical recovery as between fair and good.

Baker applied to the Board for workers' compensation benefits. Baker sought temporary total disability (TTD) benefits, medical benefits, transportation costs, compensation rate adjustment, interest, a vocational rehabilitation evaluation, and attorney's fees and costs. On February 1, 1989, the Board issued a decision. On February 15, 1989, the Board vacated its February 1 decision, ordered further discovery and required Baker to be examined by Dr. Pierron. In response to Reed–Dowd's interrogatories, Dr. Pierron indicated that he considered Baker medically stable if Baker underwent no additional surgery.

On June 21, 1989, the Board issued its final decision. The Board awarded Baker:

1. TTD benefits from March 11, 1987 through February 11, 1989;

2. A compensation rate utilizing earnings of $68,279 for 1984 and $82,876 for 1985;

3. Interest at 10.5% per annum on all TTD benefits;

4. Medical benefits from March 11, 1987 and continuing;

5. Transportation expenses incurred relating to Baker's physical therapy treatment;

6. Attorney's fees and costs.

The Board denied Baker's claim for a vocational rehabilitation evaluation.

Both parties appealed the Board's decision to the superior court. The superior court affirmed. Both parties appeal the superior court's decision. Baker claims that the Board erred in:

1. Terminating TTD benefits as of February 11, 1989;

2. Denying him vocational rehabilitation;

---

1. The record does not reveal the reason why Dr. Jones failed to repair the tear.

2. Although Dr. Jones testified that Baker was capable of "working" as of March 10, 1987, Dr. Jones did not indicate what type of work he thought Baker could perform.

3. According to Dr. Morris, medical stability does not mean a complete physical recovery. "It means they're as good as they are going to get."

3. Excluding the deposition of a doctor, Dr. Stamp, from the Board's consideration of the case;

4. Determining that Baker lacked credibility.

Reed–Dowd claims that the Board erred in allowing TTD benefits from March 11, 1987 to January 20, 1988.

## III. DISCUSSION

### A. *Did the superior court err in affirming the Board's award of TTD benefits?*

Baker argues that the Board's determination that Baker's disability ended as of February 11, 1989, is not supported by the medical evidence. On cross-appeal, Reed–Dowd argues that the Board's award to Baker of TTD benefits from March 11, 1987 to January 20, 1988, is not supported by substantial evidence.[4]

An employee is entitled to TTD benefits if he is temporarily totally disabled. AS 23.30.185.[5] In terminating Baker's TTD benefits as of February 11, 1989, the Board reasoned that Baker was no longer physically impaired.[6] This reasoning is not supported by substantial evidence and, on that basis, we reverse. On Reed–Dowd's cross-appeal, we affirm because there is substantial evidence to support the Board's award

of TTD benefits from March 11, 1987 through January 20, 1988.

### 1. Substantial evidence does not support the Board's determination that Baker is not disabled

■ The Workers' Compensation Act defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." AS 23.30.265(10). Once an employee is disabled, the law presumes that the employee remains "disabled unless and until the employer introduces 'substantial evidence' to the contrary." *Olson v. AIC/Martin J.V.,* 818 P.2d 669, 672, (Alaska 1991) (citation omitted).[7] In the present case, the Board ruled that Baker had physically recovered from the effects of his injury. This ruling is not supported by substantial evidence.[8]

■ In deciding that Baker was not physically disabled, the Board relied on the depositions of Drs. Wang and Morris. In fact, these depositions do not provide support for the Board's ruling. Although Dr. Morris testified that the recovery period associated with a patient achieving medical stability is less than one year, Dr. Morris could not estimate Baker's physical capacities upon "recovery."[9]

---

4. The logical extension of Reed–Dowd's argument is that Baker is not entitled to *any* TTD benefits after March 11, 1987. However, Reed–Dowd inexplicably limits its argument to the time period between March 11, 1987 and January 20, 1988.

5. Specifically, AS 23.30.185, as it existed prior to its 1988 amendment, provided:
    Compensation for temporary disability. In case of disability total in character but temporary in quality, 80 percent of the injured employee's spendable weekly wages shall be paid to the employee during the continuance of the disability.
    The legislature added a second sentence to AS 23.30.185 in 1988. Chap. 79 SLA 1988 § 33. This sentence provides: "Temporary total disability benefits may not be paid for any period of disability occurring after the date of medical stability." However, this amendment applies "only to injuries sustained on or after July 1, 1988," and thus does not apply to the present case. Chap. 79 SLA § 48.

6. Specifically, the Board stated that Baker's "disability" ended as of February 11, 1989, one year

after Baker's surgery, because "Drs. Wang, Morris, and Pierron [opined] that *recovery* should take between three months and a year...."

7. The Board, in the present case, incorrectly ruled that the "employee bears the burden of proving whether or not he is disabled."

8. Substantial evidence is that which "a reasonable mind might accept as adequate to support the board's conclusion" in light of the record as a whole. *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985).

9. Specifically, Dr. Morris testified at his deposition:
    Q. And when we talked earlier about the ... six month[ ] recovery period ... does that mean that you would expect a person to be *medically stationary* at the end of that three to six month period?
    A. They may be but I did add that that six month period sometimes is extended, but certainly I've never seen anybody go on longer than a year after surgery when they weren't completely *stabilized.*

Similarly, Dr. Wang testified that Baker was medically stable. However, at the same time, Dr. Wang testified that Baker suffered from considerable pain, that Baker could not raise his right arm more than ninety degrees, and that Baker's right arm was thirty to forty percent weaker than his left arm. Thus, Dr. Wang did not believe that Baker had physically recovered from the effects of his injury.[10]

■ The Board also determined that Baker was not credible and, therefore, the Board did not believe Baker's claims of ongoing physical impairment. This determination alone, however, does not support the Board's ruling that Baker's disability ended. As discussed above, the depositions of the doctors do not provide substantial evidence that Baker's disability ended. Thus, Reed–Dowd has not rebutted the legal presumption that Baker remains disabled. *Olson,* 818 P.2d at 672.

In sum, substantial evidence does not support the Board's decision that Baker is no longer impaired. Since this was the Board's justification for limiting Baker's TTD benefits, we reverse and remand to have the Board determine whether Baker otherwise qualifies for TTD benefits after February 11, 1989.

2. There is substantial evidence that Baker is entitled to TTD benefits from March 11, 1987 to January 20, 1988.

■ As noted above, in its cross-appeal, Reed–Dowd argues that Baker is not entitled to TTD benefits from March 11, 1987 to January 20, 1988, because "there is no objective medical evidence to connect the subsequent rotator cuff tear with the work-related injury that occurred in 1986." We disagree.

Dr. Tegtmeyer's arthrogram indicates that Baker's rotator cuff was partially torn as of October 1987. Dr. Wang repaired this tear in February 1988. However, Dr. Jones indicated that Baker's rotator cuff was intact as of March 1987. The existence of a tear in October 1987 is at odds with Dr. Jones' March analysis. One possible explanation is, as Reed–Dowd suggests, that Baker reinjured his shoulder and the new injury is unrelated to Baker's 1986 injury.[11] Another possible explanation is that Dr. Jones was wrong and that Baker's 1986 rotator cuff injury never healed.

The latter explanation is supported by substantial evidence. Substantial evidence is that which "a reasonable mind might accept as adequate to support the board's conclusion" in light of the record as a whole. *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985). In the present case, Baker's injuries involved the same shoulder. The record does not indicate an alternative cause of Baker's injury other than his 1986 accident. This evidence adequately supports the Board's conclusion. The superior court was therefore correct in affirming the Board. We affirm the superior court.

B. *Did the superior court err in affirming the Board's denial of Baker's claim for a vocational rehabilitation evaluation?*

■ The Board ruled that Baker was not entitled to vocational rehabilitation. At the

---

(Emphasis supplied.) Further, Dr. Morris testified earlier at the same deposition:
> Q. Can you ... estimate ... Baker's *physical capacities* ... upon full recovery from an injury and an operation such as the one he had in February of 1988?
> A. I really couldn't estimate that.

(Emphasis supplied.) According to Dr. Morris, medical stability does not mean a patient has physically recovered from his or her disability. "It means they're as good as they are going to get." *See also infra* note 10.

10. In deciding this case, the Board apparently confused the concepts of medical stability and physical recovery. A patient may become medically stable (become as good as the patient is going to get) without ever physically recovering from the effects of his or her injury. For example, a paraplegic may become medically stable, but will never physically recover from the effects of the injury.

In the present case, the depositions of Drs. Morris and Wang provide substantial evidence that Baker had medically stabilized, but the depositions provide no evidence that Baker had physically recovered.

11. Dr. Wang testified that there was no way to determine whether the tear that he repaired was related to Baker's 1986 injury.

time of Baker's 1986 injury, an employee was entitled to vocational rehabilitation if: 1) The employee is permanently disabled; and 2) The disability prevents the employee from returning to "suitable gainful employment." [12]   In denying vocational rehabilitation, the Board ruled that Baker was not impaired.   The Board reasoned, "[i]n the absence of reliable evidence of *impairment* we will not find [Baker] entitled to a vocational rehabilitation evaluation." (Emphasis supplied.)  The Board did not determine whether Baker could return to suitable gainful employment.

As discussed earlier, the Board's conclusion that Baker is not impaired is not supported by substantial evidence.   Thus, in denying vocational rehabilitation because Baker was no longer impaired, the Board erred.   We reverse and remand to allow the Board to determine if Baker otherwise qualifies for vocational rehabilitation.

C.  *The Board erred in excluding Dr. Stamp's deposition.*

■   During the discovery phase of this case, the parties deposed Dr. Stamp.  The parties referred to Dr. Stamp's deposition in the proceedings before the Board.  However, because the Board did not possess a copy of Dr. Stamp's deposition, the Board refused to consider it.  In doing so the Board erred.[13]  On remand, the Board should obtain a copy of this deposition and give it due consideration.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED to the Board for further proceedings consistent with this opinion.

---

12.   Specifically, AS 23.30.041, as it existed prior to its 1988 amendment, provided in relevant part: "If an employee suffers a permanent disability that precludes return to suitable gainful employment, the employee is entitled to be fully evaluated for participation in a rehabilitation plan...."

The 1988 amendment applies "only to injuries sustained on or after July 1, 1988," and thus does not apply to the present case.  Chap. 79 SLA § 48.

13.   For the purpose of the present appeal, we need not, and do not, decide whether this constitutes harmless error.