Richard BOUSE, Appellant,

v.

FIREMAN'S FUND INS. CO. and
Colville, Inc., Appellees.

PROVIDENCE WASHINGTON INS. CO.,
and Colville, Inc., Appellants/Cross–
Appellees,

v.

FIREMAN'S FUND INS. CO. and
Colville, Inc., Appellees/Cross–
Appellants,

and Richard Bouse, Appellee.

Nos. S–7217, S–7218, S–7267.

Supreme Court of Alaska.

Jan. 17, 1997.

Michael J. Jensen, Anchorage, for Richard Bouse.

Trena L. Heikes, Law Office of Trena Heikes, Anchorage, for Appellees/Cross–Appellants Fireman's Fund Ins. Co. and Colville, Inc.

Valli Goss Fisher and Michael P. McConahy, Call, Barrett & Burbank, Fairbanks, for Appellants/Cross–Appellees Providence Washington and Colville, Inc.

Before: COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, and FABE, JJ.

## OPINION

PER CURIAM.

We agree with the decision entered in this case by Superior Court Judge Mary E. Greene. That decision is affirmed for the reasons expressed in Judge Greene's Memorandum Decision and Order, attached hereto as an Appendix.[1]

This leaves unresolved only the cross-appeal by Fireman's Fund Insurance Company (Fireman's Fund) and Colville, Inc. (Colville), of the superior court's award of attorney's fees under Appellate Rule 508(e). The superior court awarded Fireman's Fund and Colville $3,000 in attorney's fees under Appellate Rule 508(e). They argue that AS 23.30.155(d) entitles them to their actual attorney's fees. That subsection provides in part that "[w]hen a final determination of liability is made, any reimbursement required, including interest at the statutory rate, and all costs and attorneys' fees incurred by the prevailing employer, shall be made within 14 days of the determination." AS 23.30.155(d). Fireman's Fund and Colville contend that the "final determination" to which this provision refers includes determinations made on appeal to the superior court and to this court.

It is a basic principle of statutory construction that "each part or section [of a statute] should be construed in connection with every other so as to produce a harmonious whole." *Keane v. Local Boundary Comm'n*, 893 P.2d 1239, 1247 (Alaska 1995) (citation omitted). Reading the sentence regarding attorney's fees along with the rest of the statute convinces us that "final determination" refers to determinations by the Alaska Workers' Compensation Board (Board). The rest of subsection (d), as well as the other subsections in the statute, refers exclusively to actions before the Board.

---

1. The decision has been edited in conformity with Supreme Court procedural standards.

Furthermore, we find nothing in the legislative history to suggest that the phrase "final determination" refers to determinations other than those by the Board. We hold, therefore, that AS 23.30.155 does not control the award of attorney's fees incurred in proceedings before the superior court or this court. We AFFIRM the superior court's award of $3,000 in attorney's fees to Fireman's Fund and Colville under Appellate Rule 508(e).[2]

APPENDIX

IN THE SUPERIOR COURT FOR
THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT

Providence Washington Insurance Co.,
Appellant and Cross–Appellee,

vs.

Fireman's Fund Ins. Co. and
Colville, Inc., Appellees,

and Richard Bouse, Appellee
and Cross–Appellant.

Richard Bouse, Appellant,

vs.

Fireman's Fund Ins. Co., Appellee.

Case No. 4FA–93–2962 Civil

Case No. 4FA–93–3119 Civil

*MEMORANDUM DECISION
AND ORDER*

MARY E. GREENE, Superior Court Judge.

These appeals stem from the Decision and Order of the Alaska Workers' Compensation Board issued November 30, 1993. The worker, Richard Bouse, worked for Colville, Inc., when he was injured in a 10–foot fall from a fuel tanker ·truck on January 6, 1988. At that time Colville was insured by Providence Washington Insurance Co. Colville changed insurers to Fireman's Fund Insurance Co. on April 14, 1989. Bouse claimed that he suffered a new injury on December 15, 1990. This case involves application of the "last injurious exposure rule." *See generally Olsen Logging Co. v. Lawson,* 856 P.2d 1155, 1159 (Alaska 1993); *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590 (Alaska 1979).

When he was first injured in 1988, Bouse experienced a high level of pain in his knees and sought treatment in Fairbanks from orthopedist George Vrablik, M.D., on February 10, 1988.[1] Tests and x-rays of Bouse's knees revealed the presence of chondrocalcinosis. Chondrocalcinosis is a chronic condition in which abnormal calcium deposits occur in the cartilage of a joint. Calcium deposits cause deterioration of the cartilage. As the cartilage wears away, the calcium deposits are released into the joint, causing pain, inflammation, and swelling.

After undergoing two arthroscopic surgeries on each knee,[2] Bouse settled his claim against Providence Washington and Colville by means of a Compromise and Release. The agreement released Providence Washington and Colville from liability for all future benefits other than medical benefits for the 1988 injury in return for a $50,000 lump

2. We also reject Fireman's Fund's and Colville's alternative argument that they are entitled to transportation and research costs under Appellate Rule 508(d). Under subsection (f) of Rule 508, the bill of costs is limited to those items specified in subsection (d) of the Rule. The items do not include research or transportation.

1. On February 15, 1988, a right knee arthrogram demonstrated calcification in the menisci and a tear of the posterior horn of the medial meniscus. A February 23, 1988 left knee arthrogram demonstrated the possibility of a miniscal cyst in the medial posterior aspect of the medial meniscus. Dr. Vrablik later performed an arthroscopic partial medial meniscectomy on each knee.

2. Dr. Vrablik performed arthroscopic surgery of the right knee on February 24, 1988, and of the left knee on April 6, 1988. Dr. Vrablik apparently released Bouse for light work on June 28, 1988. Bouse experienced a setback by January 1989. A second set of surgeries was performed at the University of Michigan by a leading rheu-

sum paid to Bouse.[3] The Alaska Workers' Compensation Board approved the Compromise and Release on January 30, 1990.[4]

On November 7, 1989, Dr. Vrablik rated Bouse's knees with a twenty percent impairment in each knee. Bouse was released to return to work. On May 7, 1990, Dr. Vrablik reported Bouse was doing well, including climbing up on front-end loaders.

In July and October 1990, Dr. Vrablik reported Bouse was experiencing discomfort and swelling in both knees. An assessment at the Prudhoe Bay ARCO Medical Facility in December 1990, just before the second injury, indicated Bouse had chronic pain and swelling of the knees.[5]

On December 15, 1990, while working for Colville, Bouse apparently slipped on some ice and fell to his knees.[6] He attempted to continue to work after the fall and did not leave Prudhoe Bay until his regularly scheduled time off. In January 1991, Bouse left his job due to the worsened condition of his knees.[7] He has not worked since.

Bouse saw Dr. Vrablik during his time off on January 10, 1991, for a follow-up evaluation. Dr. Vrablik's report for this visit did not mention the December accident, but noted that Bouse's knees continued to cause pain, which was occasionally severe. An evaluation on February 26, 1991, found no change.

Bouse filed a notice of injury with Colville on February 8, 1991. Fireman's Fund, the insurer at the time of the second accident, paid Bouse temporary total disability (TTD) benefits and medical benefits for the period of February 1, 1991 through April 24, 1992.

Dr. Ike performed another set of arthroscopic surgeries in Michigan during March and April 1991. On July 15, 1991, Dr. Vrablik reported that prolonged activity caused an increase in the symptoms in Bouse's knees. He released Bouse for light work. On August 2, 1991, Dr. Vrablik reported Bouse's condition unchanged and released him for light to moderate work. On September 12, 1991, Dr. Vrablik reported that Bouse's condition was stable and released him to work.

Beginning in December 1991, Bouse experienced swelling in his knees as well as increased pain. A rating performed by Dr. Vrablik on April 23, 1992 found a twenty percent impairment of each knee.[8] Dr. Vrablik noted that Bouse inquired about amputation and artificial knees and later requested pain medication.

Dr. Ike performed a second set of arthroscopic surgeries on September 18 and October 16, 1992. Bouse continued to experience pain. On January 14, 1993, at the request of Dr. Ike, Bouse was evaluated at the Coordinated Chronic Pain Program at the University of Michigan.

---

matologist, Robert Ike, M.D. Dr. Ike performed surgery on Bouse's right knee on May 5, 1989 and on the left knee on August 18, 1989.

3. The $50,000 represented "a 20% per leg impairment rating for a total of $30,880.96 in permanent partial disability compensation and the cost of the vocational rehabilitation plan in the amount of $19,119.04."

4. All agreements settling workers' compensation claims must be approved by the Alaska Workers' Compensation Board. AS 23.30.012. Before approving an agreement, the Board must determine that the agreement is in the best interests of the worker. AS 23.30.012. On January 12, 1990, the Board notified the attorney for Providence Washington that the agreement was incomplete concerning Bouse's future earning capacity and premature until Bouse completed a rehabilitation program. Nonetheless, the Board approved the settlement two weeks later.

5. Bouse worked for Colville as an office manager during 1990. He spent approximately an hour and a half to two hours a day walking around. While working, he had to rest frequently to obtain some relief from his knee pain.

6. He described the pain as intense enough to cause him to vomit several times, but he did not seek further treatment at the Prudhoe Bay ARCO Medical Facility.

7. Bouse apparently returned to work for Colville after his time off but soon left his job due to knee pain. His last day of employment with Colville was January 31, 1991.

8. This was the same as the impairment rating Dr. Vrablik made for Bouse's knees in 1989.

A functional assessment was performed at Alpine Physical Therapy on July 15, 1993. The assessment indicated Bouse could work a four-hour day: he could sit four hours, forty-five minutes at a time with his feet up, stand one hour but no longer than fifteen minutes at a time, walk one to two hours but only occasional short distances, and lift eight to ten pounds.

In September 1993, Bouse underwent a total knee replacement of his right knee.

A report from Dr. Vrablik at the end of April 1992, alerted Fireman's Fund that Bouse had been considered medically stable since July or September 1991. Fireman's Fund then terminated further TTD benefits and denied Bouse any permanent partial impairment (PPI) benefits. Fireman's Fund also controverted further medical benefits, contending that any further medical treatment would be related to the 1988 injury when Providence Washington was the insurer.

Bouse filed an Application for Adjustment of Claim against Fireman's Fund. He requested TTD benefits, PPI benefits, medical costs, compensation rate, attorney's fees, costs, penalty, interest, and rehabilitation. Fireman's Fund brought Providence Washington into the case.

A hearing was held before the Alaska Workers' Compensation Board on August 24–25, 1993. Providence Washington and Bouse argued that under the "last injurious exposure" rule, Fireman's Fund should pay for Bouse's current controverted claims for treatment and benefits. Fireman's Fund argued that Bouse's work and injury during 1990 did not constitute a substantial factor in his current medical condition.[9]

The Alaska Workers' Compensation Board issued a Decision and Order on November 30, 1993. The Board found sufficient evidence that the 1990 employment aggravated Bouse's knee condition to raise a presumption of compensability. The Board concluded, however, that Fireman's Fund had submitted substantial evidence to overcome the presumption with regard to continuing benefits beyond September 17, 1991, the date of medical stability. The Board also specifically found that the claim for continuing benefits had not been proven against Fireman's Fund by a preponderance of the evidence.[10] Overall, the Board decided:

1. The 1990 accident was no longer a substantial factor in Bouse's knee condition after he became medically stable on September 17, 1991.

2. Providence Washington was responsible for medical benefits after September 17, 1991.

3. Providence Washington was required to reimburse Fireman's Fund for the overpayment of TTD benefits to Bouse.

4. Providence Washington was required to pay Fireman's Fund's attorney's fees and costs.

5. Providence Washington was required to pay fifty percent of Bouse's attorney's fees and costs.

Providence Washington and Bouse both appealed the decision.

## I. STANDARD OF REVIEW

The parties have raised many issues in these appeals. Providence Washington raises six issues in Case No. 2962: (1) whether the Board erred in ordering Providence Washington to reimburse Fireman's Fund for TTD payments; (2) whether the Board erred in requiring Providence Washington to pay Bouse one-half of his attorney's fees and costs; (3) whether the Board erred in finding that Fireman's Fund rebutted the presumption of compensability; (4) whether the Board erred in finding that Providence

9. Fireman's Fund first requested reimbursement from Providence Washington for the entire amount paid to Bouse. In the alternative, Fireman's Fund requested a finding that the 1990 injury temporarily aggravated the 1988 condition and that Providence Washington reimburse Fireman's Fund for all benefits paid after Bouse reached medical stability.

10. Once the presumption of compensability was overcome by Fireman's Fund, Bouse and Providence Washington had the burden of proving the entire claim by a preponderance of the evidence. See, e.g., Veco, Inc. v. Wolfer, 693 P.2d 865, 870 (Alaska 1985).

Washington did not prove that the 1990 accident and/or Bouse's daily work was a substantial factor in causing Bouse's disability; (5) whether the Board erred in ordering Providence Washington to pay Fireman's Fund attorney's fees and costs; and (6) whether the Board ordered Providence Washington to reimburse Fireman's Fund for the medical benefits Fireman's Fund paid after September 17, 1991. Bouse raises one issue in his cross-appeal against Providence Washington in Case No. 2962: whether the Board erred in failing to award full attorney's fees and costs. Bouse raises four issues against Fireman's Fund in Case No. 3119: (1) whether the Board erred in denying him compensation benefits after September 17, 1991; (2) whether the Board made a "reasoned decision" as required by law; (3) whether Bouse was entitled to full compensatory and reasonable fees; and (4) whether the Board erred in failing to rule on evidentiary objections.

■■■ In a workers' compensation case, the employee initially must show at least some evidence of a preliminary link between the injury and the job.[11] *See Burgess Constr. Co. v. Smallwood*, 623 P.2d 312, 316 (Alaska 1981); *Grainger v. Alaska Workers' Compensation Bd.*, 805 P.2d 976, 977 (Alaska 1991). Once there is some evidence, usually medical testimony, that the employment could have caused or aggravated the worker's condition, a statutory presumption of compensability arises. *Providence Washington Ins. Co. v. Bonner*, 680 P.2d 96, 98–99 (Alaska 1984). The injury is presumed to be compensable under the Alaska Workers' Compensation Act unless the employer or insurer can present "substantial evidence" to rebut the presumption.[12] AS 23.30.120. In

addition, the Alaska Supreme Court has held that "an employee presumptively remains temporarily totally disabled unless and until the employer introduces 'substantial evidence' to the contrary."[13] *Olson v. AIC/Martin J.V.*, 818 P.2d 669, 672 (Alaska 1991). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *E.g., Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1046 (Alaska 1978).

■■■ The Alaska Supreme Court has consistently held that whether substantial evidence was produced to rebut the presumption of compensability is a legal question. *See, e.g., Municipality of Anchorage v. Carter*, 818 P.2d 661, 664 (Alaska 1991); *Veco, Inc. v. Wolfer*, 693 P.2d 865, 871 n. 8 (Alaska 1985); *Fireman's Fund American Ins. Cos. v. Gomes*, 544 P.2d 1013, 1015 (Alaska 1976). It is not the function of the reviewing court to reweigh the evidence or choose between competing factual inferences. *Burgess Constr. Co. v. Smallwood*, 623 P.2d 312, 317 (Alaska 1981). However, the court must independently review the evidence to determine whether the Alaska Workers' Compensation Board's conclusion was based on substantial evidence. *Gomes*, 544 P.2d at 1015; *see also Dwight v. Humana Hosp. Alaska*, 876 P.2d 1114, 1118 & n. 6 (Alaska 1994) (court independently reviews evidence supporting rebuttal of presumption to determine if it was substantial). The Board's decision should be reversed where the reviewing court " 'cannot conscientiously find that the evidence supporting that decision is substantial.' " *Grainger v. Alaska Workers' Compensation Bd.*, 805 P.2d 976, 979 (Alaska 1991) (quoting *Delaney v. Alaska Airlines*, 693 P.2d 859, 864 n. 2 (Alaska 1985)).

11. The threshold showing for the presumption to attach is minimal and requires only "some evidence" that the claim arose out of the worker's employment. *Gillispie v. B & B Foodland*, 881 P.2d 1106, 1109 (Alaska 1994).

12. "In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that ... the claim comes within the provisions of this chapter." AS 23.30.120(a). The presumption of compensability is applicable

to *any* workers' compensation claim. *Olson v. AIC/Martin J.V.*, 818 P.2d 669, 672 (Alaska 1991).

13. Under AS 23.30.185, "[t]emporary total disability benefits may not be paid for any period of disability occurring after the date of medical stability." Under AS 23.30.265(21), "medical stability shall be presumed in the absence of objectively measurable improvement for a period of 45 days" and "clear and convincing evidence" is required to rebut this presumption.

Since the presumption of compensability shifts only the burden of production and not the burden of persuasion, the evidence tending to rebut the presumption must be examined by itself. *Veco, Inc. v. Wolfer*, 693 P.2d 865, 869 (Alaska 1985). In deciding whether the presumption of compensability has been overcome, the reviewing court does not weigh the evidence tending to establish causation against the rebuttal evidence. *Id.* at 869–70. The court should view the rebuttal evidence in isolation. *Id.* at 869. In the present case, therefore, the court must examine whether the evidence presented by Fireman's Fund, when viewed in isolation, is such that a reasonable mind would accept it as adequate to support the Board's conclusion that the 1990 injury was not a substantial factor in Bouse's current condition, after September 17, 1991.[14]

If an employer or insurer is successful in overcoming the presumption, the claimant or second insurer has the burden of proving all elements of the claim by a preponderance of the evidence. *E.g., Municipality of Anchorage v. Carter*, 818 P.2d 661, 664 (Alaska 1991); *Veco*, 693 P.2d at 870; *see also Olson v. AIC/Martin J.V.*, 818 P.2d 669, 672 (Alaska 1991) (each party must then carry burden of persuasion on its claim without aid of any presumption). Any weighing of testimony occurs at this stage, after the presumption has been overcome. *Norcon, Inc. v. Alaska Workers' Compensation Bd.*, 880 P.2d 1051, 1054 (Alaska 1994).

Review of the Board's award of attorney's fees here partially requires interpretation of AS 23.30.155(d). Statutory interpretation issues are subject to independent review.[15] *Leslie Cutting, Inc. v. Bateman*, 833 P.2d 691, 693–94 (Alaska 1992). Where statutory interpretation is not necessary to review an award of attorney's fees, the standard of review is "abuse of discretion" and the Board's award should be upheld unless "manifestly unreasonable." *See, e.g., Bailey v. Litwin Corp.*, 780 P.2d 1007, 1011 (Alaska 1989); *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979).

## II. DISCUSSION

### A. Reimbursement of Fireman's Fund for Temporary Total Disability Benefits and Medical Benefits Paid after September 17, 1991

1. *Whether the Board erred in ordering Providence Washington to reimburse Fireman's Fund for the amount Fireman's Fund mistakenly overpaid Bouse in Temporary Total Disability benefits, after the date of medical stability, beyond which Bouse was not entitled to such benefits*

Fireman's Fund admits that it "mistakenly continued payment of [TTD] benefits beyond September 17, 1991," the date of medical stability.[16] A claimant is not entitled to further TTD benefits beyond the date of medical stability. AS 23.30.185. Fireman's Fund concedes that the Board erred in ordering Providence Washington to reimburse Fireman's Fund for the TTD benefits paid to Bouse beyond September 17, 1991. Providence Washington has not complied with the Board's order to reimburse Fireman's Fund for the TTD benefits. The parties agree that

---

14. By comparison, "[a]ll that is at issue in cases where the presumption alone is relied upon to support an award of compensation, and where there is no substantial evidence to rebut the presumption, is whether the Board's decision to apply the presumption is erroneous." *Providence Washington Ins. Co. v. Bonner*, 680 P.2d 96, 99 (Alaska 1984).

15. "[W]hen an issue is a question of statutory interpretation and does not involve the board's special expertise, [the reviewing court is] free to substitute [its] independent judgment and interpret the issue in accordance with [its] view of the purposes of the statute." *Kodiak Oilfield Haulers v. Adams*, 777 P.2d 1145, 1148 (Alaska 1989); *see also Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987) (stating "substitution of judgment standard" permits reviewing court to substitute its own judgment even if agency's decision had reasonable basis in law).

16. The Board specifically found that "[o]n September 12, 1991, Dr. Vrablik reported the employee's condition was stable and released him to work." The Board concluded that Bouse "was medically stable on September 17, 1991."

this court should reverse the Board's order on this issue.

When the only dispute over benefits is between two insurers, AS 23.30.155(d) requires the most recent insurer to pay the benefits to which a worker is entitled until a final determination is made regarding the extent of liability of each insurer. *See* AS 23.30.155(d).[17] The statute is intended to enable workers to receive benefits to which they are entitled without waiting for two insurance companies to obtain a Board ruling regarding which company is liable for the payments. The statute is not intended to enable the more recent insurer to be careless and then shift the burden of erroneous payments to an innocent earlier insurer. There is no reason for Providence Washington to pay for the mistake of Fireman's Fund.

■ The court will reverse the portion of the Board's order requiring Providence Washington to reimburse Fireman's Fund for the TTD benefits Fireman's Fund mistakenly overpaid to Bouse. Alaska Statute 23.30.155(j) provides the exclusive remedy for overcompensation. *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991).

2. *Whether the Board ordered Providence Washington to reimburse Fireman's Fund for medical benefits paid after Bouse reached medical stability, September 17, 1991*

■ Providence Washington contends that the Board's order does not specifically order it to reimburse Fireman's Fund for medical benefits paid by Fireman's Fund after September 17, 1991.[18] Providence Washington contends that the Board expressly ordered reimbursement only for the overpayment of TTD benefits paid by Fireman's Fund.

The Board's decision required Providence Washington to "reimburse *all* compensation payments made by Fireman's Fund after September 7 [sic], 1991." (Emphasis added.) The Board's order requires Providence Washington to remain responsible for Bouse's "continuing medical treatment." The Board specifically ordered that "Fireman's Fund's responsibility for compensation and *medical benefits* ended September 17, 1991." (Emphasis added.)

Providence Washington's interpretation is overly technical. The Board's Decision and Order must be read as one document. When the Decision and Order are read together as intended, it is clear that the Board ordered Providence Washington to reimburse Fireman's Fund for the medical benefits Fireman's Fund paid after September 17, 1991.

B. *Whether the Board Erred in Finding that Fireman's Fund Had Rebutted the Presumption of Compensability with Substantial Evidence that the 1990 Accident and Bouse's Daily Work Were Not Substantial Factors in the Development of Bouse's Current Knee Condition*

■ Both the last injurious exposure rule and the presumption of compensability apply to this case. Under the last injurious exposure rule, when an employee suffers successive injuries covered by two different insurers, both of which contribute to the employee's disability, full liability is imposed on the later [insurer]. *See Ketchikan Gateway Borough v. Saling*, 604 P.2d 590, 595 (Alaska 1979). Two determinations must be made affirmatively in order to impose liability on the later insurer: (1) whether the second injury aggravated, accelerated, or combined with a preexisting condition, and, if so, (2) whether the aggravation, acceleration, or combination was a substantial factor in bringing about the disability. *See Olsen*

---

17. Alaska Statute 23.30.155(d) states, in pertinent part:

When payment of temporary disability benefits is controverted solely on the grounds that another employer or insurer of the same employer may be responsible for all or a portion of the benefits, the most recent employer or insurer who is party to the claim and who may be liable shall make the payments during the

pendency of the dispute. When a final determination of liability is made, any reimbursement required, including interest at the statutory rate, and all costs and attorney's fees incurred by the prevailing employer, shall be made within 14 days of the determination.

18. The amount at issue is $56,991.83.

*Logging Co. v. Lawson,* 856 P.2d 1155, 1159 (Alaska 1993). When these two determinations are made, the disability is presumed to be compensable by the later insurer.

The last injury is a substantial factor if it aggravates, accelerates, or combines with a preexisting work-related condition to produce the current disability. *See Saling,* 604 P.2d at 597. Thus, the last insurer must come forward with substantial evidence that an injury during the last employment did not aggravate, accelerate, or combine with the preexisting condition to bring about the employee's disability.[19] *See Providence Washington Ins. Co. v. Bonner,* 680 P.2d 96, 97–98 (Alaska 1984).

Under the last injurious exposure rule, Bouse's 1990 daily work activities or his slip and fall could be sufficient to raise the presumption of compensability if the 1990 injury or his daily activities aggravated, accelerated, or combined with his previous knee condition to bring about his current disability. *See Saling,* 604 P.2d at 597. The Board found that such a presumption had been raised. Therefore, Fireman's Fund was required to come forward with substantial evidence that the slip and fall accident and Bouse's daily work activities during 1990 and part of January 1991[20] were not a substantial factor in bringing about Bouse's disability. *See Bonner,* 680 P.2d at 97–98.

Providence Washington concedes on appeal that Fireman's Fund was successful in partially rebutting the presumption of compensability by presenting substantial evidence that the December 15, 1990, slip and fall was not a substantial factor in Bouse's knee condition after September 17, 1991.[21] However, Providence Washington asserts that Fireman's Fund failed to rebut the presumption with regard to Bouse's daily work activities at Colville in 1990.

. Fireman's Fund contends that the issue of daily work activities was not raised before the Board. Fireman's Fund argues that the issue was waived and urges the court not to consider it.

Contrary to the assertions of Fireman's Fund, the Board's written decision indicates that Bouse's daily work activities were considered by the Board. For example, the Board stated that "sufficient evidence exists in the record to conclude the employee's ordinary work requirements aggravated his knee condition to raise the presumption of compensability." The Board expressly discussed some of the medical testimony regarding the impact of "microtraumas" and daily activities on Bouse's knees. There was medical testimony at the Board hearing regarding the fact that chondrocalcinosis renders Bouse's knees especially sensitive to the effects of the microtraumas of daily living as well as more obvious trauma from falls. The Board stated that Drs. Ike, Vrablik, and Laycoe testified at the hearing that "continuing 'microtraumas' to the knees, associated with ordinary work experiences, could be a substantial factor in the employee's disability." In the next paragraph, the Board stated that "Drs. Vrablik and Laycoe also testified at hearing that they do not believe the employee's daily work activity was a substantial factor in his condition." The Board may not have made a sharp distinction between the effects of the 1990 slip and fall and Bouse's daily work activities during 1990–91, but the Board certainly considered the impact of daily work activities through the medical testimony.

---

**19.** "Disability" is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." AS 23.30.265(10). The primary consideration is the loss of earning capacity related to the impairment, rather than the degree of physical impairment. *Olsen Logging Co. v. Lawson,* 856 P.2d 1155, 1160 (Alaska 1993).

**20.** For the sake of simplicity elsewhere in this memorandum, this employment period is referred to as the "1990 employment" or "1990 work activities" or similar phrase.

**21.** With regard to the 1990 slip and fall, Providence Washington concedes only that Fireman's Fund rebutted the presumption of compensability. Providence Washington does not concede that Bouse and Providence Washington did not meet the burden of proving by a preponderance of the evidence that the 1990 slip and fall was a substantial factor in Bouse's current disability.

1. *Was there substantial evidence to support the Board's finding that Bouse's daily work activity was not a substantial factor in the development of Bouse's current condition?*

Aggravation of a preexisting condition alone is sufficient to impose liability on the second insurer for the claimant's total disability. *See Providence Washington Ins. Co. v. Bonner,* 680 P.2d 96, 99 (Alaska 1984); *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 592 n. 4 (Alaska 1979). Therefore, in order to rebut the presumption of compensability and the last injurious exposure rule, Fireman's Fund was required to show that Bouse's 1990 employment was *not* a substantial factor contributing to his current condition. *Bonner,* 680 P.2d at 98–99 (Alaska 1984).

A second insurer can overcome the presumption of compensability by providing substantial evidence that either: (1) provides an alternative explanation which, if accepted, would exclude work-related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that the more recent employment was a substantial factor in causing the disability. *See Childs v. Copper Valley Elec. Ass'n,* 860 P.2d 1184, 1188 (Alaska 1993); *Miller v. ITT Arctic Servs.,* 577 P.2d 1044, 1046 (Alaska 1978). "Substantial evidence" is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Norcon, Inc. v. Alaska Workers' Compensation Bd.,* 880 P.2d 1051, 1054 (Alaska 1994). In some cases, affirmative evidence that the injury is not work related may be an alternative explanation which, if accepted, would exclude the more recent employment as a substantial factor in aggravating or accelerating the disability. *See Grainger v. Alaska Workers' Compensation Bd.,* 805 P.2d 976, 977 (Alaska 1991). However, "medical testimony cannot constitute substantial evidence if it simply points to other possible causes of an employee's injury or disability, without ruling out work-related causes." *Childs,* 860 P.2d at 1189. The presumption cannot be overcome

simply by showing that work-related factors were not the unique or primary cause of the disability. *See Grainger,* 805 P.2d at 977 n. 3.

When medical evidence offered to rebut the presumption is uncertain or inconclusive, the presumption of compensability is not overcome. *Grainger,* 805 P.2d at 979. This does not mean, however, that medical experts must be unanimous about causation. *Miller,* 577 P.2d at 1049. It only means that the substance of a particular physician's testimony must not be in doubt if the Board is to rely upon it to overcome the presumption. *Id.*[22] On the other hand, testimony by a physician that the employee's work "was *probably* not a substantial cause of the disability" is sufficiently affirmative to rebut the presumption of compensability. *Gillispie v. B & B Foodland,* 881 P.2d 1106, 1110 (Alaska 1994) (emphasis added).

"[W]eighing of testimony does not take place at the rebuttal stage. Rather, the weight to be accorded the doctor's testimony must take place after a determination of whether the presumption has been overcome." *Norcon,* 880 P.2d at 1054. The presumption of compensability shifts only the burden of production and not the burden of persuasion. *Veco, Inc. v. Wolfer,* 693 P.2d 865, 869 (Alaska 1985).

The Board concluded that Firemen's Fund presented substantial evidence to overcome the presumption of compensability from either the slip and fall or daily work activities. The Board noted:

Drs. Vrablik and Laycoe also testified at hearing that they do not believe the employee's daily work activity was a substantial factor in his condition. Based on our review of the entire record, including the testimony of Drs. Vrablik and Laycoe, we find that the last insurer has submitted substantial evidence to overcome the presumption.

Whether the amount of evidence was substantial is a legal question, subject to independent review by the court. *See Norcon,* 880 P.2d at 1054.

22. "[U]ncontroverted, yet inconclusive, medical evidence is to be interpreted in the employee's favor." *Fairbanks North Star Borough v. Rogers & Babler,* 747 P.2d 528, 534 (Alaska 1987).

 Providence Washington claims that Fireman's Fund did not overcome the presumption of compensability with substantial evidence because no doctor testified that Bouse's work at Colville in 1990 was not a substantial factor in his current disabled condition. Fireman's Fund claims that the presumption did not apply because (1) Bouse and Providence Washington did not establish a link between the injury and the employment; or (2) Bouse did not give timely notice of his injury (*see* AS 23.30.120(b)).[23] Fireman's Fund maintains that if the presumption applied, it overcame the presumption through lay testimony from Bouse, Hayes, Hendershot and the expert testimony of Dr. Partnow. Fireman's Fund argues that "the medical picture at all times throughout 1990 reveals no substantial worsening of Bouse's condition until the alleged December 15, 1990, injury."

Assuming *arguendo* that the Board properly decided that the presumption of compensability was established, the court concludes that Fireman's Fund overcame the presumption with substantial evidence. Providence Washington is correct that no doctor specifically testified that Bouse's daily work activity was not a substantial factor in his current disability. However, Fireman's Fund presented substantial evidence regarding an alternative explanation which, if accepted, would exclude the 1990 work activity as a substantial cause of the disability. Specifically, Fireman's Fund presented extensive evidence that Bouse's condition and degeneration was the result of the 1988 accident alone and not the 1990 employment.[24] Dr. Smith, the physician who conducted an independent medical examination on behalf of the Board, opined that the progressive deteriora-

tion since the 1988 incident accounted for the surgical frequency and medical findings. Dr. Laycoe testified that the changes in Bouse's condition between the 1988 incident and the present were the result of his degenerative condition. Dr. Vrablik testified that the cause of Bouse's condition was the chondrocalcinosis and degenerative changes.

The court concludes that the Board properly found that Fireman's Fund produced substantial evidence to overcome the presumption.

2. *Was there substantial evidence to support the Board's conclusion that Bouse reached medical stability with regard to the 1990 injury by September 17, 1991?*

 "Medical stability" is defined by the Alaska Workers' Compensation Act as the date after which further objectively measurable improvement from the effects of the compensable injury is not reasonably expected to result from additional medical care or treatment, notwithstanding the possible need for additional medical care or the possibility of improvement or deterioration resulting from the passage of time; medical stability shall be presumed in the absence of objectively measurable improvement for a period of 45 days; this presumption may be rebutted by clear and convincing evidence.

AS 23.30.265(21). A claimant is not entitled to further TTD benefits beyond the date of medical stability.[25]

The Board's decision states:

The record reflects widespread agreement among the doctors that after the December 1990 injury, the employee was medically stable on September 17, 1991. We find

**23.** Providence Washington argues that Fireman's Fund is precluded from making these arguments because it failed to file a cross-appeal from the Board's decision. The court disagrees. The appellate court is free to affirm a decision on a different basis from that relied upon below, even where no cross-appeal is filed. *See, e.g., Alaska State Employees Ass'n v. Alaska Pub. Employees Ass'n*, 825 P.2d 451, 458 (Alaska 1991).

**24.** Fireman's Fund presented direct evidence that the slip and fall was not a substantial factor

in Bouse's current condition. Drs. Laycoe, Armstrong, and Vrablik directly stated that opinion.

**25.** "Medical stability" is irrelevant in determining cessation of TTD benefits if the employee has returned to work. *Olson v. AIC/Martin J.V.*, 818 P.2d 669, 673 (Alaska 1991). The type of work, availability of the type of work in the community, and income, as compared to pre-injury employment, are the kind of factors which determine cessation of TTD after an employee is again working. *See id.* at 673–74.

the employee temporarily aggravated his knee condition in 1990 but the 1990 injury was no longer a substantial factor in his condition by September 17, 1991.

The date of September 17, 1991, is based upon Dr. Vrablik's testimony and September 1991 report. Dr. Vrablik's reports indicate that Bouse showed no measurable improvements between July 15, 1991 and September 1991. This lack of measurable improvement for more than 45 days actually raised a presumption of medical stability under AS 23.30.265(21).

The Board determined that after September 17, 1991, Bouse's knee condition was the same as it would have been without the 1990 injury. Bouse contends there was no evidence of agreement among the doctors regarding Bouse's medical stability. He argues that because Dr. Vrablik was the only physician to specifically conclude that Bouse was medically stable on the particular date of September 17, 1991, the Board's finding regarding medical stability is not based on substantial evidence.

Providence Washington points out that in his Board-ordered independent medical examiner's report, Dr. Smith stated that he believed Mr. Bouse was *not* medically stable. However, there is no indication of what definition of medical stability Dr. Smith was using, the statutory definition or a medical definition. *See Municipality of Anchorage v. Leigh*, 823 P.2d 1241, 1242 (Alaska 1992). The statutory definition adopted by the Alaska Legislature in 1988 requires some measurable improvement for an employee to continue to receive TTD benefits and makes no provision for TTD benefits when an employee's condition deteriorates. *Id.* at 1244–45; *see also* AS 23.30.265(21).

Under the statutory definition, Bouse was medically stable September 17, 1991, because

his knees showed no objectively measurable improvement. This finding is documented in Dr. Vrablik's records. Therefore, he was no longer entitled to receive TTD benefits from Fireman's Fund.

In light of the definition of medical stability in AS 23.30.265(21), Dr. Vrablik's reports and testimony provided the Board with sufficient evidence to find that Bouse had reached medical stability by September 17, 1991.

3. *Did the Board erroneously equate medical stability with the end of compensable disability?*

Bouse argues that the Board failed to apply the presumption of "continuing compensability" and erroneously equated medical stability with the end of all compensable disabilities.[26] Bouse argues that the Board should have looked at Bouse's earning capacity as an indicator of continuing disability. "Loss of earning capacity is the defining characteristic of a compensable disability." *Wien Air Alaska v. Kramer*, 807 P.2d 471, 474 (Alaska 1991). Bouse points out that he was able to work during the latter half of 1990, but was unable to work from the end of January 1991 to September 17, 1991. After September 17, 1991, he continued to be unable to work. Based on earning capacity alone, he would seem to have a continuing disability.

The problem with Bouse's argument is that it places all responsibility for his current disability on his 1990 employment, despite the fact that there was substantial evidence that the 1988 injury was much more significant to his current condition. The medical evidence shows that the 1988 injury was far more serious and likely to have set in motion the degenerative process of the chondrocalcinosis than the 1990 injury. The Board did not determine that Bouse had [any] disability as a result of his knee condition.[27] The

**26.** A similar concern was raised in *Municipality of Anchorage v. Leigh*, 823 P.2d 1241, 1243–46 (Alaska 1992). In *Leigh* the constitutionality of the presumption of medical stability in AS 23.30.265(21) was challenged based on the statute's failure to deal with situations where the worker's condition was deteriorating. *Leigh*, 823 P.2d at 1243. The supreme court held that the statutory definition of "medical stability" was constitutional, but limited the holding to the facts

in *Leigh* where the worker's condition neither improved nor deteriorated during a period of 45 days. *Leigh*, 823 P.2d at 1245.

**27.** The Board's decision describes Dr. Vrablik's rating performed on April 23, 1992 and reported in a May 29, 1992 letter, after Bouse was considered medically stable with regard to the 1990 injury. Dr. Vrablik rated Bouse as having a thirty (30) percent total lower extremity impair-

Board's finding of medical stability is relevant only to Fireman's Fund's liability for TTD benefits and is unrelated to Providence Washington's liability for the 1988 injury.

The record reflects that several of the doctors conclude that the December 1990 slip and fall is no longer a substantial factor in Bouse's current condition. This combined with Dr. Vrablik's reports of medical stability provide substantial evidence to support the Board's finding that Bouse reached medical stability by September 17, 1991, with regard to any worsened symptoms of his knee condition caused by the 1990 employment. The Board did not find that September 17, 1991, marked the end of Bouse's disability; it determined only that any disability after that date was the result of the 1988 injury, and therefore was the responsibility of Providence Washington, rather than Fireman's Fund.

4. *Should the Board have stricken Dr. Armstrong's and Dr. Smith's evidence from the record?*

a. *Dr. Armstrong's report*

 Bouse argues that the Board erred in failing to strike Dr. Armstrong's deposition. Fireman's Fund argues that the evidentiary issue involving the report of Dr. Armstrong was not properly raised before the Board. Bouse and Providence Washington did not petition the Board to compel production and did not supply the further briefing for the objection to Dr. Armstrong's

report as required by the Board when the objection was raised at the hearing. The court determines that the issue was not properly preserved for review.[28]

b. *Dr. Smith's report*

 Bouse contends that Dr. Smith's independent medical examiner's report should not have been considered by the Board, because it was not furnished until after September 4, 1993, more than fourteen days after his July 15, 1993, examination and after the August 24–25, 1993, hearing before the Board. Alaska Statute 23.30.095(k) states that "[t]he report of the independent medical examiner shall be furnished to the board and to the parties within 14 days after the examination is concluded."

Fireman's Fund contends that Bouse and Providence Washington did not preserve the issue of Dr. Smith's report for appeal because the issue was not raised before the Board. Fireman's Fund also suggests that Dr. Smith's report could actually have met the statutory time requirement, because his examination of Bouse's lengthy medical records may have extended well beyond July 15, 1993. Bouse did not reply to these arguments.

The Board noted in its decision that the record remained open until November 2, 1993 to receive not only Dr. Smith's report, but also an additional deposition and final briefs. There are no allegations that Bouse and Providence Washington did not have the opportunity to comment to the Board about

ment, which translates into a fourteen (14) percent whole person impairment. A whole person impairment rating can be used to calculate permanent partial disability compensation under AS 23.30.190. Under the statutory definition, Bouse is medically stable because his knee condition shows no improvement. However, the Board's finding that Bouse was medically stable on September 17, 1991 was not a finding that Bouse had no disability that would qualify him for PPI benefits under AS 23.30.190 (which mandates use of the AMA guidelines to evaluate permanent impairments) if the Compromise and Release agreement with Providence Washington did not limit him to medical benefits for the 1988 injury. *See Leigh*, 823 P.2d at 1245 & n. 10.

28. Even if Dr. Armstrong's deposition was included in the record erroneously, the error was

harmless. The Board's decision does not reflect much reliance on Dr. Armstrong's testimony. For example, the Board's written decision does not refer to the opinion of Dr. Armstrong as often as the opinions of Drs. Ike, Vrablik, and Smith. It is true that Dr. Armstrong represents a rheumatologist's view in opposition to Dr. Ike, also a rheumatologist. Where the Board mentions the testimony of Dr. Armstrong, however, the Board relied at least as much on the testimony of two to three other physicians expressing the same opinion. *See Gillispie v. B & B Foodland*, 881 P.2d 1106, 1110 n. 3 (Alaska 1994) (challenged testimony did not stand alone as evidence of noncompensability and did not contradict testimony of treating physician). With regard to Bouse's claim for continuing benefits, the Board clearly relied most heavily on Dr. Smith's evaluation.

Dr. Smith's report or to cross-examine Dr. Smith at the hearing. The Board did not abuse its discretion by allowing Dr. Smith's report to remain in evidence despite its lateness.

C. *Whether the Board Erred in Finding that Providence Washington and Bouse Had Not Shown by a Preponderance of the Evidence that the 1990 Accident and/or Bouse's Daily Work Aggravated Bouse's Preexisting Knee Condition to the Extent of Being a Substantial Factor in the Cause of Bouse's Current Condition*

■ If an employer or insurer is successful in overcoming the presumption, the claimant has the burden of proving all elements of the claim by a preponderance of the evidence. *E.g., Municipality of Anchorage v. Carter,* 818 P.2d 661, 664 (Alaska 1991); *Veco, Inc. v. Wolfer,* 693 P.2d 865, 870 (Alaska 1985). Once Fireman's Fund rebutted the presumption of its liability for benefit payments beyond the September 17, 1991, date of medical stability, Providence Washington had the burden of proving by a preponderance of the evidence that Bouse's 1990 work and/or accident was a substantial factor in the current condition of Bouse's knees.

The Alaska Supreme Court has stated that in applying the last injurious exposure rule, the Board should focus on the employee's most recent employment-related injury in considering his claim for disability compensation. The most recent injury must itself have caused, or must have aggravated, accelerated, or combined with a prior condition in such a way that it may be said to be a substantial factor in bringing about the employee's current inability to work. However, the Board should not find that a causal relationship does not exist merely because a prior injury might also suffice as a concurrent cause of the employee's current disability.

*Olsen Logging Co. v. Lawson,* 856 P.2d 1155, 1161 (Alaska 1993). The supreme court has endorsed use of the "but for" test in cases involving successive employers where the presumption of compensability is overcome

to determine whether the more recent employment was a substantial factor in an employee's disability. *Fairbanks North Star Borough v. Rogers & Babler,* 747 P.2d 528, 531–32 (Alaska 1987). The supreme court has explained the application of the but for test to cases where the last injurious exposure rule may also be applied:

Thus, to say that the worker's disability would not have occurred "but for" a particular period of employment is merely to say that the period of employment was a substantial factor in the resulting disability.

. . . .

Where, as here, a claimant has a degenerative injury, the claimant can be expected to experience some degree of disability regardless of any subsequent trauma.[ ] It can never be said that "but for" the subsequent trauma the claimant would not be disabled. . . . Rather, the claimant need only prove that "but for" the subsequent trauma the claimant would not have suffered disability at this time, or in this way, or to this degree. In other words, to satisfy the "but for" test, the claimant need only prove, as indicated above, that the aggravation, acceleration or combination was a substantial factor in the resulting disability.

*Rogers & Babler,* 747 P.2d at 532–33 (footnote omitted).

The Board here did not discuss the "but for" test, but essentially applied it in concluding that Bouse's knees would have degenerated to the same extent even without his 1990 employment. The evidence linking the deterioration of Bouse's knees and his eventual total right knee replacement to his 1990 employment was not sufficient to say that but for his 1990 employment Bouse's knees would not have degenerated as rapidly or to the same extent.

■ In determining whether the Board erred in finding that Bouse and Providence Washington had not carried their burden of persuasion, this court's task is not to reweigh the evidence. *See id.* at 533. The court must determine whether there was substantial evidence in light of the whole record to support the Board's conclusion that the claim was not established by a prepon-

derance of the evidence. *Gillispie v. B & B Foodland,* 881 P.2d 1106, 1111 (Alaska 1994). The Board may be found in error "if the reviewing court cannot conscientiously find that the evidence supporting the decision is substantial when viewed in light of the entire record, including the evidence opposed to the Board's decision." *Rogers & Babler,* 747 P.2d at 534.

Bouse's knees clearly continued to deteriorate after 1990. He had arthroscopic surgery in 1991 and 1992 and, eventually, knee replacement surgery on one knee. Dr. Ike testified that Bouse's 1990 work or the slip and fall incident had accelerated the degeneration of his knees. Certainly, aggravation of a preexisting condition may be found even without a specific traumatic event. *See id.* at 534. None of the physicians testified that daily work activities could *not* have accelerated the deterioration of Bouse's condition.

The Board, however, relied upon Dr. Smith's observation that the deterioration of Bouse's knees appeared to have occurred at the same rate both before and after 1990. Drs. Vrablik and Laycoe made similar observations. The opinion of Dr. Ike was weighed against the opinions of Drs. Vrablik, Laycoe, Armstrong, and Smith. In weighing the evidence to determine whether the claim was proved with a preponderance of the evidence, the Board had the power to choose the view of Drs. Laycoe, Armstrong, Smith, and Vrablik rather than the view of Drs. Ike and Partnow. *See Kodiak Oilfield Haulers v. Adams,* 777 P.2d 1145, 1151 (Alaska 1989). The Board concluded that Bouse's 1990 employment only temporarily aggravated his symptoms.

■ It was not unreasonable for the Board to conclude that after September 1991, Bouse's knees were in the same condition they would have been without the 1990 employment. Looking at the record as a whole, there was conflicting evidence, but the fact that Dr. Ike and Dr. Partnow[29] disagreed with the Board's conclusion does not make the conclusion unsupported. *See Rogers & Babler,* 747 P.2d at 534. "A reviewing court

may not 'displace the Board's choice between two fairly conflicting views even though the court [could] justifiably have made a different choice had the matter been before it de novo.'" *Kodiak Oilfield Haulers,* 777 P.2d at 1151, (quoting *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985)).

The court concludes that substantial evidence supported the Board's finding that Bouse and Providence Washington had failed to prove by a preponderance of the evidence that Bouse's 1990 employment was a substantial factor contributing to his knee condition after September 17, 1991.

### D. *Attorney's Fees and Costs*

1. *Whether the Board erred in ordering Providence Washington to pay the attorney's fees and costs of Fireman's Fund*

■ The Board ordered Providence Washington to pay the costs and attorney's fees of Fireman's Fund except for certain deposition costs based on AS 23.30.155(d). Alaska Statute 23.30.155(d) provides, in part:

When payment of temporary disability benefits is controverted solely on the grounds that another employer may be responsible for all or a portion of the benefits, the most recent employer or insurer who is party to the claim and who may be liable shall make the payments during the pendency of the dispute. When a final determination of liability is made, any reimbursement required, including interest at the statutory rate, and all costs and attorneys' fees incurred by the prevailing employer, shall be made within 14 days of the determination.

Providence Washington argues that the Board misinterpreted the statute.

Providence Washington argues that the statute means that the prevailing insurer is entitled to attorney's fees and costs only where no other grounds are raised for controversion of the claim. Fireman's Fund argues that the sentence containing the word "solely" is intended to ensure the worker receives benefits to which he/she is clearly entitled regardless of which insurer ultimate-

---

29. Dr. Partnow is Mr. Bouse's internist in Fairbanks.

ly pays and to limit such automatic payment to situations where it is clear that at least one employer or insurer will be liable. Fireman's Fund argues that the attorney's fees clause is included to discourage insurers from trying to join other insurers with little evidence against them in hopes of a "nuisance action" settlement.

The court agrees with the interpretation urged by Fireman's Fund. The last sentence of AS 12.30.055(d) stands independently of all other sentences. Although both of the relevant sentences deal with the last injurious exposure rule, they address different issues. The "solely" sentence is there to guarantee benefits to injured employe[e]s. The last sentence is there to provide reimbursement, including attorney's fees, to the insurer who prevails. Accordingly, the court concludes that the Board properly ordered Providence Washington to reimburse Fireman's Fund['s] attorney's fees.[30]

2. *Whether the Board erred in ordering Providence Washington to pay half of Bouse's attorney's fees and costs after determining that Bouse did not prevail in his claim against Fireman's Fund*

■ Bouse has cross-appealed against Providence Washington, arguing that the Board should have ordered Providence Washington to pay all of his attorney's fees and costs, not just half. He contends that because the Board awarded Bouse all compensation benefits available to him from Providence Washington, he should be awarded full attorney's fees and costs for his entire claim before the Board.

Providence Washington argues that Bouse is not entitled to any attorney's fees and costs because the Board expressly declared Bouse to be a non-prevailing party. In the alternative, Providence Washington contends that because Bouse sought TTD, PPI, vocational rehabilitation, and medical benefits and

received only medical benefits, the Board's award of only half attorney's fees to Bouse was reasonable.

Unless statutory interpretation is required, the standard of review for the Board's award of attorney's fees and costs is "abuse of discretion." *See Tobeluk v. Lind,* 589 P.2d 873, 878 (Alaska 1979). The award of attorney's fees should be upheld unless it is "manifestly unreasonable." *Bailey v. Litwin Corp.,* 780 P.2d 1007, 1011 (Alaska 1989).

■ The Workers' Compensation Act provides for awards of attorney's fees to the worker. AS 23.30.145. Attorney's fees are based "on the amount of compensation controverted and awarded." *Id.* The purpose of AS 23.30.145 is to make attorney fee awards both fully compensatory and reasonable so that competent counsel will be available to injured workers. *Cortay v. Silver Bay Logging,* 787 P.2d 103, 108 (Alaska 1990). Where an insurer resists payment, thus creating the employee's need for legal assistance, the insurer is required to pay the attorney's fees relating to the unsuccessfully controverted portion of the claim. *See Underwater Constr., Inc. v. Shirley,* 884 P.2d 156, 159 (Alaska 1994). A worker is entitled to full reasonable attorney's fees for services performed with respect to issues on which the worker prevails. *Cortay,* 787 P.2d at 108.

The Board determined that Bouse was not entitled to one hundred percent of his attorney's fees, because he did not prevail on all issues. The Board stated that "[a]lthough he was able to protect his medical benefits and compensation benefits through September 17, 1991, he was not able to prevail on his substantially larger claim for continuing compensation benefits."

Bouse argues that he should be considered a prevailing party and be awarded one hundred percent of his attorney's fees, because he will receive all that he is entitled to from Providence Washington.[31] Bouse points out

---

**30.** Even if Providence Washington's interpretation was correct, the court would uphold the decision of the Board. A fair reading· of the controversion notices filed by Fireman's Fund indicate[s] that Fireman's Fund "controverted

solely" that the earlier insurer was responsible for all or some of the benefits.

**31.** Bouse also contends the Board undervalued the medical benefits he will continue to receive from Providence Washington.

that Providence Washington filed a notice of controversion against his claim of a December 1990 injury.[32]

The court disagrees with Bouse. Bouse's claims for continuing benefits were directed at and controverted by Fireman's Fund. His Compromise and Release agreement with Providence Washington already precluded anything more than medical benefits from Providence Washington. When the Board referred to Bouse's inability to prevail on his claims for "continuing compensation benefits," it was referring to his claims against Fireman's Fund for TTD, PPI, and vocational rehabilitation benefits.[33] Since Bouse has not worked since January 1991 and apparently has not received TTD benefits since April 1992, these benefits would be substantial for him. It was certainly reasonable for the Board to conclude that Fireman's Fund was the prevailing party and that the claims on which Bouse did not prevail were worth as much monetarily as the medical benefits. In order to recover fees under AS 23.30.145(b), a worker must succeed on the claim. *Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1193 (Alaska 1993); AS 23.30.145(b). Therefore, it was reasonable for the Board to award Bouse half the total of his attorney's fees and costs, rather than one hundred percent of fees and costs.[34]

■ Providence Washington has argued that Bouse should receive no attorney's fees, because it controverted Bouse's claims only as a precaution and in the belief that Fireman's Fund should be responsible for payments due to the 1990 injury. Alaska Statute 23.30.145 provides that the amount of attorney's fees is based on the amount of compensation controverted and awarded. It is true there was no dispute over the significance of Bouse's 1988 work-related injury or

the fact that Bouse was suffering from a painful deteriorating bilateral knee condition triggered by the 1988 injury. The continuation of medical benefits, whether paid by Fireman's Fund or Providence Washington, was not an issue. With both Fireman's Fund and Providence Washington controverting his claim, however, the involvement of Bouse's counsel was required. *See Underwater Constr.*, 884 P.2d at 159. Once the Board held Providence Washington rather than Fireman's Fund to be responsible for Bouse's treatment after September 17, 1991, Providence Washington's payment of medical benefits was in accordance with the Compromise and Release agreement rather than an award by the Board. Nonetheless, the Alaska Supreme Court has held that attorney's fees should be awarded even where payments are voluntary if the claim was initially controverted. *Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1190–91 (Alaska 1993). Providence Washington filed a controversion and exposed itself to an attorney's fees award.

The court concludes that the Board's requirement that Providence Washington pay half of Bouse's attorney's fees was reasonable and was not an abuse of discretion. The Board's order awarding Bouse fifty percent of his attorney's fees and costs, paid by Providence Washington, is affirmed.

3. *Whether the Board erred in denying payment of Bouse's attorney's fees by Fireman's Fund*

■ Bouse contends that because the Board found Fireman's Fund to be responsible for benefit payments to Bouse until September 17, 1991, Bouse should receive part of his attorney's fees from Fireman's Fund (the half not paid by Providence Washington). He argues that in cases involving the last

---

32. According to its brief, Providence Washington filed its notice of controversion as a precaution.

33. The Board referred to "medical benefits" separately from other "compensation benefits."

34. However, if he had been successful in his claim for continuing compensation benefits for injury caused by his 1990 employment, he would receive a significant amount in TTD or PPI pay-

ments in addition to the medical benefits he is receiving now. Because of the Compromise and Release agreement with Providence Washington, limiting Providence Washington's future liability to medical benefits, it would have been to Bouse's benefit for Fireman's Fund to remain responsible for his workers' compensation benefits. The Board's determination that Bouse was a non-prevailing party was correct with regard to Bouse's claim as a whole.

injurious exposure rule, the employee normally receives full fees and costs.

Attorney's fees in last injurious exposure cases have been awarded when the efforts of the employee's attorney were instrumental in obtaining some or all of the benefits ultimately awarded to the employee. *See, e.g., Childs,* 860 P.2d at 1190. Bouse argues that he successfully defeated the efforts of Fireman's Fund to bar his claim based on failure to give timely notice and the absence of any disabling injury. The Board also determined that Bouse's 1990 injury temporarily aggravated his symptoms and ordered Fireman's Fund to be responsible for benefits until September 17, 1991.

Bouse is correct that the Board ruled in his favor on these issues. The Board should have provided some fees payable by Fireman's Fund to pay a portion of Bouse's total attorney's fees.

 Employees are entitled to full attorney's fees only for issues on which they succeed. *Childs,* 860 P.2d at 1193; AS 23.30.145. Because Bouse did not prevail against Fireman's Fund on issues that ultimately affected the benefits he could receive, he is not entitled to an award of his attorney's fees and costs. The court affirms the Board's decision denying Bouse any fees from Fireman's Fund.

III. *CONCLUSION*

Based on the foregoing:

1. The court reverses the portion of the Board's order requiring Providence Washington to reimburse Fireman's Fund for TTD benefits Fireman's Fund mistakenly overpaid to Mr. Bouse.

2. The court concludes that the Board ordered Providence Washington to reimburse Fireman's Fund for any medical benefits Fireman's Fund paid after September 17, 1991.

3. The Board's decision that Fireman's Fund rebutted the presumption of compensability is supported by substantial evidence.

4. The Board's decision that Bouse had reached medical stability, as defined in AS 23.30.265(21), by September 17, 1991, is supported by substantial evidence. The Board did not find that September 17, 1991, marked the end of Bouse's disability; it determined only that any disability after that date was the result of the 1988 injury, and therefore not the responsibility of Fireman's Fund.

5. The Board did not abuse its discretion in considering Dr. Armstrong's deposition and Dr. Smith's report.

6. Substantial evidence supports the Board's finding that Bouse and Providence Washington had failed to prove by a preponderance of the evidence that Bouse's 1990 employment was a substantial factor contributing to his knee condition after September 17, 1991.

7. The Board's order for Providence Washington to pay the attorney's fees and costs of Fireman's Fund in accordance with the Board's decision was based on a proper interpretation of AS 23.30.155(d).

8. The Board's order awarding half attorney's fees and costs to Bouse, paid by Providence Washington, is affirmed.

9. The Board's decision not to grant Bouse fees against Fireman's Fund is affirmed.

Thus, the Decision of the Alaska Workers' Compensation Board is AFFIRMED in all respects, except the requirement that Providence Washington reimburse Fireman's Fund for payment made after September 17, 1991. The case is remanded to the Board for proceedings consistent with this opinion.

DATED at Fairbanks, Alaska this 25th day of May, 1995.